```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| RICKY MUNEZ, | HON. JEROME B. SIMANDLE |
| Petitioner, | Civil No. 09-3860 (JBS) |
| v. | [Criminal No. 06-499 (JBS)] |
| UNITED STATES OF AMERICA, | **OPINION** |
| Respondent. | |

APPEARANCES:

Mr. Ricky Munez
No. 41150-050
FCI-Fairton
P.O. Box 420
Fairton, New Jersey 08320
    Petitioner pro se

Paul J. Fishman
United States Attorney
    By: Patrick C. Askin
        Assistant U.S. Attorney
Camden Federal Building and
United States Courthouse
P.O. Box 2098
Camden, New Jersey 08101
    Attorney for Respondent


**SIMANDLE**, District Judge:

I.  **INTRODUCTION**

    Petitioner Ricky Munez, proceeding without a lawyer, brings this civil action for habeas corpus relief pursuant to 28 U.S.C. § 2255.  Petitioner claims he was denied his Sixth Amendment right to effective assistance of counsel when his trial attorney,

Michael W. Kahn, failed to object to three issues: a discrepancy between the Criminal Complaint and the Indictment (Ground I); a violation of the Interstate Agreement on Detainers Act (Ground II); and a miscalculation of the sentencing guidelines (Ground III).[1] For the reasons discussed herein, the Court will deny Ground I and Ground III of Petitioner's request for relief without a hearing. However, for Ground II of Petitioner's motion, the Court will grant an evidentiary hearing in order to determine whether relief is warranted upon that ground.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2006, the United States government filed a one-count Criminal Complaint against Petitioner, charging him with conspiracy to distribute and to possess with intent to distribute five grams or more of crack cocaine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(B), and in violation of 21 U.S.C. § 846. [Criminal No. 06-499 ("Crim.") Docket Item 1.]  On February 6, 2006, the United States Marshals Service lodged a Detainer against Petitioner which incorrectly stated, "[t]he notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this Detainer because the subject is not currently serving a sentence of imprisonment at the time

---

[1] In his reply brief, Petitioner broadly alleges violations of his Fourth and Fifth Amendment rights but fails to provide any basis for these claims. [Civil No. 09-3860 ("Civ.") Docket Item 7.] The Court therefore only addresses issues pertaining to Petitioner's Sixth Amendment claims.

2

the Detainer is lodged." [Civ. Docket Item 6.] Petitioner was, however, serving a sentence at South Woods State Prison in Bridgeton, New Jersey on the date the Detainer was filed, and the requirements and stipulations of the Interstate Agreement on Detainers Act therefore applied. Id.

On July 5, 2006, a federal grand jury returned an indictment charging Petitioner with the offense stated above. He appeared before the Court pursuant to a writ of habeas corpus ad prosequendum on July 19, 2006 for an arraignment, and on October 10, 2006 for a status conference. [Crim. Docket Items 14, 17.] Authorities returned Petitioner to state prison after each proceeding. On October 24, 2006, Petitioner again appeared before the Court for a motions and plea hearing, where Petitioner pleaded guilty to the one-count indictment. [Docket Items 19, 20.]

On March 23, 2007, the Court sentenced Petitioner to 188 months imprisonment followed by five years supervised released after determining the applicable guideline range to be 188-235 months based on Petitioner's total offense level of 31 and Criminal History Category of VI. [Crim. Docket Item 35.] The sentence was concurrent with the sentences Petitioner is serving on seven indictments and convictions in the State of New Jersey. The Third Circuit affirmed the judgment of conviction and sentence but declined to address Petitioner's ineffective

3

assistance of counsel claim. United States v. Munez, 292 Fed. App'x 175 (3d Cir. 2008). On August 4, 2009, Petitioner timely filed the instant motion for relief under 28 U.S.C. § 2255. [Civ. Docket Item 1.]

**III. DISCUSSION**

    **A.    Standard for Ineffective Assistance of Counsel**

In order to prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both elements of the two-part test set out in Strickland v. Washington, 466 U.S. 668 (1984). First, the petitioner must show that counsel's performance fell below an "objective standard of reasonableness," and was "outside the wide range of professionally competent assistance." Id. at 688, 690; United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007). Counsel's performance must be evaluated from the attorney's perspective at the time of the alleged error, recognizing that a broad range of strategies may have been appropriate under the given circumstances. Strickland, 466 U.S. at 669. Any alleged errors must have been so serious that the attorney was not acting as "counsel" as guaranteed by the Sixth Amendment. Id. at 687.

Second, the petitioner must show that the attorney's performance prejudiced the petitioner such that but for counsel's allegedly deficient performance, the outcome would have been different. Id. at 694. In the context of guilty pleas, the

4

first prong remains the same, Hill v. Lockart, 474 U.S. 52, 57 (1985), but the second prong requires the petitioner to show a reasonable probability that but for counsel's errors, the petitioner would have insisted on going to trial rather than pleading guilty. Id. at 59. If the petitioner fails to show the requisite prejudice, the claim for ineffective counsel should be disposed of on this ground, thereby avoiding the need to evaluate counsel's performance. Strickland, 466 U.S. at 697.

**B.   Discrepancy Between Criminal Complaint and Indictment**

In Ground I, Petitioner claims he was denied effective assistance of counsel when his attorney failed to object to a discrepancy between the dates set forth in the Criminal Complaint and in the Indictment.[2] Although Petitioner uses the term "variance" to refer to the deviation, a "variance" in the context of criminal cases refers to a difference between the allegations and the facts proven at trial. Because Petitioner pleaded guilty and no trial was had, no legal variance exists in this case. The case law pertaining to variances in this other sense is nevertheless relevant.

---

[2] A criminal complaint is "a written statement of the essential facts constituting the offense charged," and "must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer." Fed. R. Crim. P. 3. An indictment, although similar in nature, is a more formal written accusation of the offense charged; it is presented to a court for prosecution, and, unlike a criminal complaint, must be approved by a grand jury. Fed. R. Crim. P. 6(f).

5

In criminal cases, a variance between the facts proved at trial and the allegations in the indictment is immaterial and may be disregarded if it does not substantially affect the rights of the accused either by "insufficiently informing [the defendant] of the charges against him such that he is taken by surprise and prevented from presenting a proper defense" or "by affording him insufficient protection against reprosecution for the same offense." United States v. Lewis, 893 F.2d 487, 492 (3d Cir. 1997) (citing United States v. Pierce, 893 F.2d 669, 676 (5th Cir. 1990)). "A mere inaccuracy setting forth the date of an offense in a criminal complaint would not appear to be a material or critical variance." United States v. Carter, 756 F.2d 310, 313 (3d Cir. 1985). Moreover, a complaint or indictment which states "on or about" a certain day is not limited to a specific date. United States v. Schurr, 775 F.2d 549, 559 (3d Cir. 1985).[3]  Such language puts the accused on notice that he is being charged with offenses that may have occurred within a reasonable time from the date specified. See id.

---

[3] See also United States v. Kenyon, 397 F.3d 1071, 1078 (8th Cir. 2005) ("The law is clear that the use of 'on or about' in an indictment relieves the government of proving that the crime charged occurred on a specific date, so long as it occurred within a reasonable time of the date specified.") (quoting United States v. Duke, 940 F.2d 1113, 1120 (8th Cir. 1991)).

6

Although no actual variance exists here, this reasoning can be applied to the disputed discrepancy in dates. The Criminal Complaint states:

> On or about January 8, 2004, in Atlantic County, in the District of New Jersey, and elsewhere, the defendant . . . did knowingly and intentionally [] conspire to distribute and to possess with intent to distribute more than five grams of a mixture or substance containing a detectable amount of cocaine base . . . [i]n violation of Title 21, United States code, Section 846.

[Crim. Docket Item 1.] The Indictment states:

> From on or about January 8, 2004 to on or about January 23, 2004, in Atlantic County, in the District of New Jersey, and elsewhere, the defendant . . . did knowingly and intentionally conspire and agree with others to distribute and to possess with intent to distribute five grams or more of a mixture and substance containing a detectable amount of cocaine base . . . [i]n violation of Title 21, United States Code, Section 846.

[Crim. Docket Item 12.] Petitioner argues that because his trial attorney did not object to the alleged difference in the date ranges set forth in the Complaint and in the Indictment, he was convicted of conspiracy rather than simple possession, and that the discrepancy deprived him of fair notice of the charges.

Petitioner's argument fails because there is no requirement that an indictment must parrot the charge contained in a previous complaint; indeed, as a grand jury investigates the matter, it may choose to modify, drop or

add charges as it sees fit.  Petitioner is simply incorrect in assuming that his Indictment must be identical to the Complaint.

Moreover, it is clear that Petitioner's rights have not been substantially affected by this so-called discrepancy. The Criminal Complaint stated that the offense for which Petitioner was being charged occurred "[o]n or about January 8, 2004" whereas the Indictment stated "[o]n or about January 8, 2004, to January 23, 2004."  The Complaint used the language "on or about" and therefore was not limited to the specified date.  The Indictment was consistent with the Complaint, and merely expanded the date range within a reasonable time frame.  Furthermore, the offenses described in the Complaint and the Indictment were identical.  Because no Federal Rule of Criminal Procedure (or any other binding legal authority) requires that a criminal complaint be filed before an indictment, the government's Criminal Complaint arguably gave Petitioner even more notice of the charges.

Petitioner's Rule 11 form and plea colloquy further undermine the argument that he was deprived of sufficient notice of the charges.  [Crim. Docket Items 20, 22.]  Mr. Munez testified that he read the charge in the Indictment and understood it and discussed it with Mr. Kahn.  (Plea Hr'g Tr. 16:7-16 (Oct. 26, 2006).)  When asked whether he

8

understood the factual basis for such charges, Petitioner answered in the affirmative. (See id. at 29:12-32:35.) Petitioner also indicated that he had sufficient time to discuss his case with his trial attorney, and that he was pleased with his representation. (Id. at 17:15-23.) Likewise, the Court explicitly paraphrased the Indictment to Mr. Munez at his Rule 11 hearing as charging the crack cocaine distribution conspiracy for the period of "on or about January 8, 2004, to on or about January 28, 2004," which he indicated he well understood. (Id. at 29:19-30:5.) He then proceeded to give a detailed factual basis for this crime including his own distributions of crack cocaine on the dates of January 8, 15 and 23. (Id. at 30:14-32:11.)

Petitioner does not make any indication that had his attorney objected to the so-called discrepancy in dates, he would have insisted upon going to trial rather than pleading guilty. Similarly, Petitioner fails to show how he was prejudiced from counsel's failure to make a frivolous argument. He had ample notice of the charges, and the "variance" between the Criminal Complaint and the Indictment is immaterial. Without showing sufficient prejudice, Petitioner has failed to satisfy a requisite element of the Strickland test for an ineffective assistance of counsel

9

claim. His request for relief under § 2255, based on Ground I, is therefore denied.

**C. Violation of Interstate Agreement on Detainers Act**

In Ground II, Petitioner claims he was denied effective assistance of counsel when his trial attorney failed to object to a violation of Article IV(e) of the Interstate Agreement on Detainers Act that would have mandated dismissal of the Indictment. The government does not contest the fact that a violation of the Act did occur, but rather argues that counsel's failure to raise this point was not prejudicial because the government would have simply reinstated the charges.

1. <u>Interstate Agreement on Detainers Act</u>

The Interstate Agreement on Detainers Act ("IADA" or "Agreement") is a compact between forty-eight states, the federal government, and the District of Columbia (Mississippi and Louisiana are not parties to the agreement). 18 U.S.C. app. 2 (2009).It "creates uniform procedures for lodging and executing a detainer, <u>i.e.</u>, a legal order that requires a State in which an individual is currently imprisoned ["sending state"] to hold that individual when he has finished serving his sentence so that he may be tried by a different State ["receiving state"] for a different crime." <u>Alabama v. Bozeman</u>, 533 U.S. 146, 148

10

(2001).  The purpose of the Agreement is two-fold:  to ensure the defendant is given a speedy trial,and to minimize interruption of the defendant's ongoing rehabilitation or prison treatment program.  Id. at 155.

Article IV(e) of the IADA, the "anti-shuttling" provision, is triggered when the receiving state lodges an official detainer against the defendant. United States v. Mauro, 436 U.S. 340, 349 (1978). It provides that if a trial is not had on any indictment, information, or complaint before the defendant is returned to his original place of imprisonment, such charges must be dismissed with prejudice. 18 U.S.C. app. 2, Art. IV(e).  The duration or number of times the prisoner is removed from the sending state is irrelevant; any violation of the anti-shuttling provision must result in dismissal. Bozeman, 533 U.S. at 154-155. The Supreme Court reasoned that the Agreement's language was intended to be absolute, and that to hold otherwise would mean any violation could be considered "technical," "de minimis," or "harmless" error, rendering the provision useless. Id.

A statute codified at 18 U.S.C. app. 2, § 9 later specifies, however, that when the United States is the receiving State, as in the present case, charges may be dismissed with or without prejudice.  Pub. L. No. 100-690, §

7059. In determining whether dismissal should be with prejudice, a court is to consider the seriousness of the offense, the facts and circumstances of the case which led to dismissal, and the impact of reprosecution on the administration of the agreement on detainers and on the administration of justice. Id. at § 9(a)(1).

### 2. Claim for Ineffective Counsel for Failure to Raise an IADA Violation

Petitioner was serving a state sentence at South Woods Prison in Bridgeton, New Jersey, when the United States Marshals Service lodged a detainer against him.[4] His presence in this Court was then secured on several occasions through a writ of habeas corpus ad prosequendum for pre-sentencing purposes, after which he was returned to state prison. There is no dispute that after the Detainer had been filed, an Article IV(e) violation occurred each time Petitioner was returned to South Woods before his plea hearing.

Although the government contends that these violations were minor, the Supreme Court made clear in Bozeman that any Article IV(e) violation, regardless of its nature or duration, must result in a dismissal of the charges. 533

---

[4] The detainer incorrectly stated that Petitioner was "unsentenced" by the state. The government alleges that such a mistake was a "direct oversight" on its own behalf, rather than the product of bad faith.

U.S. at 155. Thus, had counsel raised the IADA violation as a defense, the Agreement would have mandated dismissal of the Indictment.[5] Petitioner's claim for ineffective assistance of counsel, as alleged in Ground II, therefore has merit if he can show sufficient prejudice resulting from his attorney's error, and that counsel's failure to raise the violation fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 688, 694.

In the present case, there are three ways in which Petitioner could show sufficient prejudice. First, Petitioner could demonstrate a reasonable likelihood that an objection to the IADA violation would have resulted in a dismissal with prejudice, in which case it would be unnecessary for Petitioner to show that "but for counsel's errors, petitioner would not have pleaded guilty" because the government would not be allowed to refile the Indictment. Second, Petitioner could show that had the Indictment been dismissed without prejudice and refiled, the delay would have allowed him to construct a viable defense, or that he would not have pleaded guilty a second time and instead would have insisted upon going to trial. Third,

---

[5] By pleading guilty, Petitioner has waived his right to now independently raise an Article IV(e) defense. United States v. Palmer, 574 F.2d 164, 166 (3d Cir. 1978). A guilty plea, however, does not preclude his ineffective assistance of counsel claim as it pertains to the IADA violation.

Petitioner could show that had the original Indictment been dismissed without prejudice, the government would not have reinstated the charges.

Under § 2255, a district court is required to hold an evidentiary hearing to "determine the issues and make findings of fact and conclusions of law" unless the motions, files, and record conclusively show that the petitioner is entitled to no relief.  28 U.S.C. § 2255.[6]  At this time, the record is not sufficiently developed for the Court to determine whether Petitioner has made a satisfactory showing of prejudice resulting from his trial attorney's error in failing to make a pre-conviction motion to dismiss the Indictment under the IADA, nor does it conclusively show

---

[6] The Third Circuit found in United States v. Williams, 615 F.2d 585 (1980), that the district court abused its discretion by denying petitioner's request for an evidentiary hearing where petitioner alleged ineffective assistance of counsel based on his attorney's failure to raise a violation of the IADA's anti-shuttling provision.  However, at the time the Court of Appeals decided Williams, the IADA mandated that any Article IV(e) violation must result in dismissal with prejudice, regardless of the receiving state's identity.  The IADA was later amended in 1988 to allow dismissal to be with or without prejudice when the United States is the receiving state.  Pub. L. No. 100-690, § 7059 (codified as amended at 18 U.S.C. app. 2, § 9).  Williams is therefore distinguishable from the present case because had the IADA violation been raised here, dismissal of the Indictment may have been with or without prejudice, as the United States was the receiving state.  Thus, although the Court elects to hold an evidentiary hearing in this case, Williams does not require that the Court do so for every violation of the IADA's anti-shuttling provision where the Agreement does not mandate that criminal charges necessarily be dismissed with prejudice.

14

that Petitioner is entitled to no relief.  Additionally, the record does not provide sufficient facts for the Court to determine whether counsel's failure to raise the violation was an intentional decision in the interest of trial strategy,[7] or rather an oversight on counsel's behalf.  It is therefore also unclear whether counsel's performance fell below an "objective standard of reasonableness."  Strickland, 466 U.S. at 688.

Because the Court cannot, at this point, determine whether Petitioner has satisfied either of the Strickland prongs based on Ground II, it would be premature to rule on the merits of Petitioner's claim for ineffective assistance of counsel.  See United States v. Graham, 179 Fed. App'x 528, 533 (10th Cir. 2006) (finding a need for an evidentiary hearing where the record failed to reveal whether defense counsel investigated possible IADA violations or discussed the IADA issues with the petitioner prior to the plea agreement).  Accordingly, Petitioner will be granted an evidentiary hearing limited to the claims set forth in Ground II of his petition, where he will bear the burden of

---

[7] It is sometimes the case that a defendant, serving a sentence in a nearby state prison, prefers to be returned to state custody rather than to exercise his IADA right to remain in federal custody, for reasons of the defendant's preference.  An evidentiary hearing may shed light upon this prospect as well as others.

showing that his attorney's failure to file an IADA motion was below an objective standard of reasonableness and that he suffered sufficient prejudice from this error, thereby depriving him of effective assistance of counsel as guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 694.  Petitioner will be appointed counsel pursuant to 18 U.S.C. § 3006A(a)(2) for the purposes of this hearing.[8]

### C. Miscalculation of Sentencing Guidelines

In Ground III, Petitioner claims he was denied effective assistance of counsel when his trial attorney failed to object to an "error" or "miscalculation" of the applicable sentencing guidelines.  Petitioner argues that because a number of his prior offenses were simple possession, and because some offenses were "double" or "triple" counted, he should not have been assigned Career Offender status.

Under the United States Sentencing Guidelines, Career Offender status requires that a defendant is at least 18 years old at the time he committed the instant crime of conviction; that the instant offense is a felony that is either a crime of violence or controlled substance offense;

---

[8] Under Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must appoint counsel for an indigent petitioner when an evidentiary hearing is warranted and convene the hearing as soon as practicable after giving the attorneys adequate time to investigate and prepare.

and that the defendant have at least two prior felony convictions for either crimes of violence or controlled substance offenses. U.S. Sentencing Guidelines Manual § 4B1.1(a) (2009). A conviction for simple possession may not be counted as a "controlled substance offense" under the guidelines. Salina v. United States, 547 U.S. 188, 188 (2006).[9] Should defense counsel fail to object to any improper enhancement under the sentencing guidelines, counsel has rendered ineffective assistance; a court must then assess whether the defendant was prejudiced by such errors. Jansen v. United States, 369 F.3d 237, 244 (3d Cir. 2004).

The Court determined, as was agreed upon by both parties in the plea agreement, that Petitioner meets all three requirements for Career Offender status. First, Petitioner was 35 years old when he committed the instant crime, thereby satisfying the age requirement. Second, the instant offense of conviction was a drug-related crime, as defined by the Guidelines, for conspiracy to distribute and

---

[9] "The term 'controlled substance offense' means under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

17

to possess with intent to distribute crack cocaine.  Third, Petitioner already had ten felony convictions for controlled substance offenses as defined by U.S.S.G. § 4B1.2(b).  A review of Petitioner's criminal record shows that in 2003, Petitioner was arrested after what police believed to be a drug transaction between Petitioner and another individual, and that a subsequent search revealed that Petitioner had 37 plastic bags in his possession, all containing a white substance that tested positive for cocaine; he pled guilty on May 27, 2004, and he was sentenced on December 17, 2004, to six years in New Jersey State Prison.  (See Presentence Investigation ¶¶ 70-71.)  In 2004, Petitioner was found with 79 clear plastic bags in his front pants pocket, also containing a white substance that tested positive for cocaine.  Petitioner pled guilty to this charge of possession of cocaine with intent to distribute, and was sentenced on December 17, 2004, to a six-year term concurrent with the sentence on the 2003 arrest.  (See id. at ¶¶ 73-75.)  These two convictions alone are sufficient to satisfy the third requirement for Career Offender status – that a defendant have at least two previous felony

convictions for crimes of violence or drug-related offenses.[10]

Petitioner has not shown a reasonable likelihood, nor made any indication, that but for counsel's failure to raise a meritless argument he would not have pleaded guilty and would have instead insisted upon going to trial. He has therefore failed to satisfy the <u>Strickland</u> test for an ineffective assistance of counsel claim based on his attorney's failure to object to a "miscalculation" of the applicable sentencing guidelines. Accordingly, Petitioner's request for relief based on Ground III is denied.

**IV. CONCLUSION**

For the reasons set forth above, Petitioner's motion will be denied in part, with the remainder to be decided after an evidentiary hearing. The Court will deny his requests based on Ground I and Ground III of his petition, but will grant an evidentiary hearing limited to the claim in Ground II of his petition. The Court will appoint

---

[10] Nor is this a case in which defense counsel could have even plausibly argued that Career Offender status somehow overrepresented Petitioner's criminal history or likelihood of recidivism. Mr. Munez had amassed 36 criminal history points through his prior state convictions, including 12 sentences to state prison. Since Category VI criminal history status is achieved with just 13 points, Mr. Munez' record was nearly three times that needed for Category VI status.

counsel to represent Petitioner in the evidentiary hearing on Ground II.  The accompanying Order will be entered.

                                            **s/ Jerome B. Simandle**
                                            JEROME B. SIMANDLE
                                            United States District Judge