IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

RICKY MUNEZ,

    Petitioner,

   v.

UNITED STATES OF AMERICA,

    Respondent.

---

:
:
:
:
:
:
:
:
:
:
:

HON. JEROME B. SIMANDLE

Civil No. 09-3860 (JBS)

[Criminal No. 06-499 (JBS)]

**OPINION**

APPEARANCES:

Edward F. Borden, Jr., Esq.
EARP COHN, PC
20 Brace Road
4th Floor
Cherry Hill, NJ 08034
  Attorney for Petitioner

Paul J. Fishman
United States Attorney
  By: James P. Lynch
    Patrick C. Askin
    Assistant U.S. Attorneys
Camden Federal Building and
United States Courthouse
P.O. Box 2098
Camden, New Jersey 08101
  Attorney for Respondent

**SIMANDLE,** District Judge:

# I.  INTRODUCTION

This matter is before the Court on Mr. Ricky Munez's petition for habeas corpus pursuant to 28 U.S.C. § 2255.  This Court rejected the other two grounds of the Petition in its Opinion of July 21, 2010.  <u>Munez v. United States</u>, Civil No.

09-3860, 2010 WL 2925917 (D.N.J. July 21, 2010) (<u>Munez I</u>)
(rejecting Grounds I and III relating to variance between the
criminal complaint and the indictment as well as calculation of
sentencing guidelines).  Petitioner's final basis for relief,
contained in Ground II of the Petition, asserts that his counsel
was ineffective for failing to have his indictment dismissed.
His counsel could have done so because the United States
repeatedly violated the Interstate Agreement on Detainers Act
(IADA) when shuttling Mr. Munez between state and federal
detention.  <u>See</u> <u>id.</u> at *5; 18 U.S.C. App. 2 § 9.  The Court
appointed counsel and held an evidentiary hearing on November 15,
2010 in this matter, pursuant to Rule 8 of the Rules Governing §
2255 Proceedings, to determine whether Petitioner was prejudiced
by his former counsel's failure to have the indictment dismissed.
Proof of such prejudice requires a showing that the Court would
have dismissed the indictment with prejudice to re-indictment or
that Petitioner would not have pleaded guilty upon re-indictment.
For the reasons explained below, the Court will deny the
petition.

## II.  BACKGROUND

The IADA is a compact between forty-eight states, the
federal government, and the District of Columbia (Mississippi and
Louisiana are not parties to the agreement).  <u>See</u> 18 U.S.C. App.

2

2.  Among other things, the Agreement "creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime."  Alabama v. Bozeman, 533 U.S. 146, 148 (2001).  It also "provides for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State."  Id.

Article IV(e) of the IADA, the "anti-shuttling" provision, is triggered when the receiving state lodges an official detainer against the defendant.  United States v. Mauro, 436 U.S. 340, 349 (1978).  It provides that if a trial is not had on any indictment, information, or complaint before the defendant is returned to his original place of imprisonment, such charges must be dismissed with prejudice.  18 U.S.C. app. 2, Art. IV(e).  The purpose of Article IV(e) is two-fold: to ensure the defendant is given a speedy trial, and to minimize interruption of the defendant's ongoing rehabilitation or prison treatment program. Bozeman, 533 U.S. at 155.  The duration or number of times the prisoner is removed from the sending state is irrelevant; any violation of the anti-shuttling provision must result in dismissal.  Bozeman, 533 U.S. at 154-155.  In so holding, the Supreme Court reasoned that the Agreement's language was intended

3

to be absolute, and that to hold otherwise would mean any violation could be considered "technical," "de minimis," or "harmless" error, rendering the provision useless.  Id.

Under the IADA, the federal government is treated as if it were a state, and so the anti-shuttling provision applies to transfers between state and federal custody, even within a single state.  18 U.S.C. App. 2, § 2; United States v. Thompson, 562 F.2d 232, 234 n.2 (3d Cir. 1977) (rejecting argument that statute only applies to interstate transfers).  However, Congress has amended the statute so that when the United States is the receiving State, as in the present case, charges may be dismissed with or without prejudice.  See 18 U.S.C. App. 2, § 9.

Petitioner was charged with conspiracy to possess with intent to distribute more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (distribution) and 21 U.S.C. § 846 (conspiracy).  Even though he was serving a state sentence at South Woods State Prison in Bridgeton, New Jersey on the date his federal indictment was filed, his detainer incorrectly stated that he was an unsentenced state prisoner.  As a result, Petitioner was shuttled between state and federal custody six times during the course of his federal proceedings, of which four such day-trips to federal court violated the IADA when he was

returned to New Jersey prison without his federal charges being disposed of.[1]

There is no dispute that an IADA violation occurred each time Petitioner was returned to South Woods before his sentencing. The issue was not spotted or raised by Petitioner, his former counsel, the Assistant United States Attorney, or the Court, during the pendency of his criminal charges. As explained in the Court's prior Opinion on this matter, the conceded violation of the anti-shuttling provision of the IADA would have resulted in dismissal, if raised, but the dismissal could be with or without prejudice. Munez I, at *5. Petitioner's entitlement to relief therefore turns on whether dismissal would have been with prejudice, and if not, whether he would have pleaded guilty upon being re-indicted.

The Court convened a hearing to allow Petitioner to make these showings. The November 15, 2010 evidentiary hearing centered on two issues. First, it examined the extent of the IADA problem in the United States Marshal's Office and what steps were taken to remedy the problem — which goes to whether dismissal would have been with prejudice, as explained below; and second, it examined Petitioner's testimony that he would have

---

[1] There was no violation in his first trip to federal court since no detainer existed for his initial appearance, and there was no violation on his last trip for sentencing since he was returned to state custody immediately upon disposition of his federal charge, as required by the IADA.

proceeded to trial if his case had been dismissed without prejudice and then re-indicted.

The extent of IADA violations present in this district was put at issue by Petitioner's argument that vacating the sentence was the only remedy adequate to deter such widespread violations. At the hearing, Deputy United States Marshal Terence Merrigan testified that after learning of this matter he discovered in February 2010 that there had been a total of six violations of the anti-shuttling provisions of the IADA in the Camden vicinage in recent cases (including this case) but he could not speak to violations elsewhere in the district or in closed cases.  (Tr. of Nov. 15, 2010 H'rg 11-12).  Deputy Marshal Merrigan traced the error to an administrative assistant in the Marshal's Office who had mistakenly used the incorrect detainer form entitled "Detainer Against Unsentanced Prisoner" (Form USM-16A) (Ex. U.S.-1), rather than the proper form of detainer for Munez's situation as a sentenced state prisoner, entitled "Detainer Against Sentenced State Prisoner" (Form USM-17A) (Ex. U.S.-2).  (Id. at 11.)  After Munez's petition was filed, Merrigan promptly reported it to his superiors in Newark, who conducted training for office personnel in Trenton and Camden so that violations would not recur.  (Id. at 14.)

At the November hearing, Mr. Munez also testified that had the indictment been dismissed, and if he had been re-indicted, he

would not have agreed to plead guilty.  (Id. at 41-42.)  This testimony is examined in greater detail below.

Munez's trial attorney, Michael Kahn, Esquire, who had been appointed under the Criminal Justice Act, testified through his affidavit that he was unaware of the anti-shuttling provisions of the IADA, and that the subject of Munez's return to state custody after each trip to the federal courthouse never came up. (Affidavit of Michael Kahn at ¶¶ 3-5, 10).  Mr. Kahn stated that he would have researched the issue, explained it to Mr. Munez, and told him that the dismissal motion could succeed with a dismissal either with prejudice or without prejudice, in which case the government could indict anew.  (Id. at ¶ 7.)  He would have presented Mr. Munez with the option of filing the motion or not.  (Id. ¶ 8.)  Mr. Kahn would further have advised him that "there was a strong likelihood that the indictment would have been dismissed without prejudice and the U. S. government would immediately re-indict him.  I would have also advised Mr. Munez that under those circumstances, the only thing that we would have accomplished was a slight (several months) delay of the inevitable."  (Id. ¶ 9.)

There is no dispute that if an IADA motion had been made and granted without prejudice, that the government would have re-indicted, as set forth in the Affidavits of Assistant United

States Attorneys Jacqueline Carle and Norman Gross (Ex. U.S. 5 & 6), and Petitioner's counsel does not dispute that assumption.

At the conclusion of the continued hearing on November 18, 2010, this Court ordered the United States to supplement the evidentiary record with respect to the issue of the federal criminal defendants in this vicinage with pending detainers who were identified as having had their IADA rights violated. On December 7, 2010, the Government submitted an affidavit of James Lynch explaining that he has been advised by Assistant United States Attorney Askin as to what the United States Attorney's Office has done about these cases. In one case, United States v. Gordon (09-020 RBK), the two assistants assigned to prosecute the case have agreed to contact the defendant's attorney to give notice regarding the IADA issue. (Lynch Aff. ¶ 9.) He avers that with regard to the remaining five cases identified by Deputy Merrigan, a review revealed that there had been no federal court appearances for those defendants since February 9, 2010 (the date on which the six cases were originally identified). (Id. ¶ 10.) It appears that the five cases were concluded before February 2010, and are not pending in this Court.

The United States Attorney's Office had taken steps to acquaint the criminal prosecutors with the importance of compliance with the anti-shuttling provisions of the IADA in 2007, when Assistant United States Attorney Kevin Smith

circulated a Department of Justice Monograph entitled

"Prosecuting Prisoners: Section 3161(j) and the Antishuttling

Rule of the Interstate Agreement on Detainers" (August 2003) (Ex.

U.S. 8).  That monograph contained the advice that:

> AUSAs should take the antishuttling rule very
> seriously.  Letting a federal defendant return
> to his state correctional facility before his
> federal sentence is imposed . . . – absent
> waiver of antishuttling rights – could lead to
> the dismissal of the federal charges <u>with
> prejudice</u>.  <u>See</u> <u>Alabama v. Bozeman</u>, 533 U.S.
> 146, 157 (2001) (affirming dismissal with
> prejudice of receiving state's charges where
> defendant was transferred to receiving state
> for arraignment and was returned next day to
> sending state). Because of <u>Bozeman</u>, there is
> no longer any such thing as a technical
> violation of the antishuttling rule.  While it
> is true that when the federal government
> violates the antishuttling rule the federal
> district court <u>may</u> dismiss the indictment
> without prejudice, it may just as easily
> dismiss it with prejudice.

(<u>Id.</u> at pp. 15-16.)

Also, according to Assistant United States Attorney Lynch,

when Assistant United States Attorney Askin, in defending the

present petition, brought the situation to his attention, Lynch

convened a meeting of Camden Assistant United States Attorneys

assigned to criminal cases and brought the IADA issues to their

attention and discussed it with them.  (Lynch Aff. ¶ 6.)  Lynch

also affirmed that, prior to the filing of the instant petition

by Mr. Munez, he knew of no case where any defendant prosecuted

by the Camden Office had raised any allegations concerning IADA

violations.  (Id. ¶ 8.)


III.  **ANALYSIS**

   **A. Standard**

   To gain relief based on a Sixth Amendment violation, the

Petitioner must show both that counsel's conduct fell below "an

objective standard of reasonableness" and "that there is a

reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."

Strickland v. Washington, 466 U.S. 668, 694 (1984).  In this case

involving a guilty plea, the second prong means that Petitioner

must either persuade the Court that there is a reasonable

probability that he would not have pleaded guilty upon re-

indictment, see Hill v. Lockart, 474 U.S. 52, 59 (1985), or that

the Court would have dismissed the indictment with prejudice.[2]

---

[2]  The Court does not reach the first prong of the
Strickland test because, regardless of how the claim is framed,
Petitioner fails to meet the second prong.  The claim can be
framed as prior counsel's failure to advise Mr. Munez of the
possibility of dismissing the indictment.  This would make proof
of the first prong easier, while making proof of prejudice
harder, since the Petitioner would not only have to make the
showings discussed in this opinion, but also the additional
showing that he would have required his attorney to make the
motion in the first place.  Alternatively, the claim could be
based on counsel's failure to file the IADA motion.  This framing
makes the proof of prejudice slightly easier, but makes proof of
objective unreasonableness harder, as it is not clear that a
reasonable attorney would have filed a motion that had little
chance of aiding his client.  Since the Court ultimately finds

B.  **Nature of Dismissal**

The Court first considers whether, if trial counsel had made an IADA dismissal motion, the dismissal would have been with or without prejudice to re-indictment.  By the terms of the IADA, the Court must weigh three factors in determining whether to dismiss with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of the agreement on detainers and on the administration of justice."  18 U.S.C. App. 2 § 9(a)(1).

Petitioner's offense was quite serious.  Petitioner was indicted for conspiracy to possess with intent to distribute more than five grams of crack cocaine.  Petitioner already had numerous felony convictions.  In fact, he had amassed the astonishing record of 12 prior felony convictions and 36 criminal history points, placing him well into Criminal History Category VI of the United States Sentencing Guidelines.  He faced a term of imprisonment from five years to forty years.  Section 9 of the IADA contains no criterion for assessing seriousness, but the plain meaning suggests that the court should examine the nature

---

that Petitioner cannot show the requisite prejudice even if it is assumed that the motion would have been filed, it does not matter whether the Court construes the claim as regarding the failure of prior counsel to advise Mr. Munez, or as regarding the failure to file the motion.  Either way, the claim is meritless without reaching the question of whether the conduct fell below an objective level of reasonable representation.

of the conduct and the potential sentence.  See, e.g., United States v. Pope, 183 F. Supp. 2d 773 (D. Md. 2001); United States v. Allen, 80 F. Supp. 2d 472, 474-75 (E.D. Pa. 2000). Petitioner's crime, involving a conspiracy to distribute crack cocaine and carrying a possible sentence of decades, is among the most serious crimes one can be charged with committing.  The fact that he was sentenced to 188 months imprisonment and five years supervised release further shows the seriousness of his crime and his recidivism.

Petitioner argues that the four IADA violations in his case resulting from the mis-marked form were more than a mere clerical error, but rather part of a systematic course of conduct which, if resulting in a dismissal without prejudice, would seriously undermine the administration of the agreement on detainers and the administration of justice.  Petitioner does not contend that the United States willfully violated the IADA, but instead that the violation was part of a pattern of such violations as a result of neglect.  Petitioner points to a number of cases that have distinguished their holdings from a case involving a pattern of such incidents even in the absence of willful violation, but identifies only one case in which the Court's holding was dismissal with prejudice because of such a pattern:  United States v. Pope, 183 F. Supp. 2d 773 (D. Md. 2001).

However, Pope is distinguishable in multiple ways.  That
case involved a defendant with a serious mental illness requiring
treatment who repeatedly asserted his right to remain in federal
custody; it involved an offense which the court found to not be
especially serious, explicitly distinguishing the charges from
the kind of drug conspiracy at issue in this case; and it
involved actual shuttling between a federal detention center and
state custody.  Id. at 777-78.  In this case, by contrast, there
is no evidence of a disruption of any treatment or rehabilitation
program; Petitioner did not assert any desire to remain in
federal custody; Petitioner's crime is much more serious; and
Petitioner was not placed in a federal facility overnight or for
any time other than the periods he spent in the U.S. Courthouse
for court matters amounting to a few hours on each occasion.
Although these returns to state custody violated the IADA's anti-
shuttling provision, they barely amounted to shuttling at all.
On each occasion, the prisoner left South Woods in the morning,
came to federal court in Camden, and returned to South Woods in
the afternoon, to his own cell, programs and routines of state
prison life.  His attorney met with him at South Woods and at
this courthouse on the various occasions.  (Kahn. Aff. ¶ 3.)
There was no impairment to the attorney-client relationship in
addressing this case as a result of the shuttling under these
circumstances.

13

Petitioner's most plausible argument that this Court would have dismissed the indictment with prejudice is evidence that such a dismissal would have been seen by the Court as necessary to maintain the IADA and deter the series of violations of which his case was one.  But the evidence adduced to support the premise that drastic action is necessary to enforce compliance with the IADA is not persuasive.  In response to the filing of the present petition, the United States Marshal's Office immediately took steps to ensure that future violations do not occur, through additional training and use of proper forms.  The United States Attorney's Office likewise responded with some additional IADA sensitization in staff meetings when this situation first came to light and more recently, as detailed above.  That Office will notify defense counsel of an IADA violation discovered in a current case awaiting sentencing, as noted above.

There is no evidence of intentional misconduct or of deliberate indifference to Mr. Munez's rights, and the nature of this anti-shuttling violation did not impair his relationship with his attorney or his ability to defend this case or his rehabilitative efforts as a sentenced state prisoner.  These circumstances would never have justified a dismissal with prejudice in this case, nor would a dismissal with prejudice have

been necessary to send a remedial message regarding this sort of inadvertent anti-shuttling violation.

In answer to the question of what the Court would have done at the time if Mr. Kahn had presented an IADA motion to dismiss, the unequivocal answer is that the dismissal would have been without prejudice to reindictment.  For a serious offense and a minor violation of the IADA, Petitioner would have had to make a very compelling showing that administration of the IADA required dismissal with prejudice.  Based on what has been adduced on this petition for habeas corpus — especially in the absence of any allegation of intentional abuse — Petitioner would not have been able to make that showing, and it is a virtual certainty that this Court would have dismissed without prejudice.

### C.  Whether Munez Would Have Pleaded Not Guilty

Accepting the Government's undisputed representation that it would have re-indicted Petitioner, the Court must determine whether Mr. Munez has shown a "reasonable probability" that he would have not pleaded guilty when re-indicted following a dismissal for the IADA violation.  See Hill v. Lockhart, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show [only] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

15

trial."). The analysis of this circumstance — i.e., what the Petitioner would have done if the indictment had been dismissed and re-issued — is performed based on what the Petitioner would have done at the time his counsel would have had the indictment dismissed. The motion for IADA dismissal would have been ripe upon the date when Munez was first returned to state custody after his arraignment. Thus, evidence that Petitioner ultimately regretted pleading guilty is irrelevant to the analysis of what Petitioner would have decided to do before he ever pleaded guilty when facing the second indictment.

What is meant by "reasonable probability" that he would have not pleaded guilty is not "certainty or even a preponderance of the evidence that" he would have done so. Boyd v. Waymart, 579 F.3d 330, 354 (3d Cir. 2009) (quoting Strickland v. Washington, 466 U.S. 668, 693-94 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome[;] . . . [Petitioner] need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland v. Washington, 466 U.S. 668, 694 (1984). But the showing does require "more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial." Powell v. Meyers, 214 Fed. App'x 197, 200 (3d Cir. 2007) (quoting Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995)). Most often, this showing is made by demonstrating that the

16

evidentiary situation would have been different if counsel had been effective.  See, e.g., United States v. Kauffman, 109 F.3d 186, 191 (3d Cir. 1997) (holding that evidence that effective counsel would have discovered "background information supporting an affirmative defense to the crime, and casting doubt on the government's case with respect to Kauffman's criminal intent" was sufficient to find that the petitioner would, with reasonable probability, have proceeded to trial).

Here, there is no suggestion that the factors affecting Petitioner's original decision to plead guilty would have changed.  His former counsel avers that he would have continued to advise Petitioner that his conviction was nearly inevitable. (Kahn Decl. ¶ 9.)  It is not disputed that the United States had three audio-recorded controlled buys, purportedly of Petitioner engaging in distribution of crack cocaine, as well as the testimony of the cooperating witness who performed the controlled buys (Carle Decl. ¶ 9).  Munez would have understood that if he pleaded not guilty, went to trial and was convicted, he would have faced a significantly longer sentence than the one he received as a result of the plea.  This is because he would not have gotten the adjustment based on acceptance of responsibility and because he would have been sentenced later. That is, even if the same sentence were imposed after a later conviction after trial, since he is running concurrent sentences, a later

17

sentencing would have resulted in a longer actual period of confinement because the sooner he was sentenced, the sooner he could begin to earn credit on his federal sentence.

Munez's testimony that he nevertheless would have proceeded to trial was not credible as to his after-the-fact view of the situation, nor persuasive as to what his view would have been at the time.  The Court carefully observed petitioner in this evidentiary hearing.  His self-interest in the matter, his evasive or even illogical demeanor while testifying, and his self-contradictions undermine his insistence that he would have gone to trial in this case after re-indictment.  He was unable to offer a coherent answer to the question of why he would have gone to trial instead of pleading guilty.  (E.g., Tr. of Nov. 15, 2010 H'rg 75.)  When asked about the strong evidence against him, he first said he was unaware of it, (id. at 68), but later admitted that he was aware of it.  (Id. at 69.)  Munez's past history is also illuminating, since he had pleaded guilty on each of twelve prior occasions to felony charges and had not once elected to go to trial.  (Tr. of Nov. 15, 2010 H'rg 92.)

Unlike cases in which the ineffectiveness claim asks the Court to entertain a counterfactual in which more helpful evidence would have been discovered, or some inculpatory evidence would have been suppressed, nothing about the revelation of the IADA violation would have changed the fundamental calculus about

18

whether Petitioner should have pleaded guilty.  Even in
hindsight, Petitioner has offered no theory of defense that would
have emerged if he had elected to go to trial.  Petitioner's
counsel suggested at oral argument that Petitioner would have
pleaded not guilty and gone to trial in order to preserve the
IADA issue for appeal, namely, to contend that his dismissal
should have been with prejudice.  It would appear that there
could have been no rational expectation that such an argument
would succeed on appeal, for the reasons outlined above.
Further, dismissal of a federal indictment for an anti-shuttling
violation is unprecedented except for the Pope case, which is
highly distinguishable as explained above.  The particularly
benign circumstances of the present IADA violation, coupled with
the strong evidence of a serious drug crime committed by a
conspicuously recidivist offender, would have lent no realistic
possibility to an appeal on that ground.  These reasons to plead
guilty were and are plain, and this Court cannot find that Mr.
Munez would have elected to go to trial when there was no
rational prospect of gain to be accomplished, and every reason to
believe that the outcome would have been significantly worse for
him.  There is not sufficient evidence in this record to present
a reasonable probability that Petitioner would have proceeded to
trial in the face of the weight of the prosecution's evidence,
the delay in sentencing, the prospect of a heavier sentence due

to loss of benefit of acceptance of responsibility, and the lack of any prospect of success in preserving the IADA dismissal issue for appeal.  See United States v. Graham, 312 Fed. App'x 79, 85-86 (10th Cir. 2008) (making a similar finding in an IADA-related Sixth Amendment case with regard to strength of the evidence).

In sum, the Court finds that all of the reasons that Petitioner pleaded guilty would have remained if he were re-indicted, and that Petitioner has not demonstrated a reasonable probability that he would have elected to go to trial upon a post-IADA re-indictment.

**IV.  CONCLUSION**

Because Mr. Munez has not shown a reasonable probability that this Court would have dismissed the indictment with prejudice, or that he would have proceeded to trial upon re-indictment, he cannot show the prejudice necessary to prevail on his Sixth Amendment claim.  Therefore, the final ground of Mr. Munez's 28 U.S.C. § 2255 Petition is without merit, and the Petition will be denied.

The Court will deny issuance of a certificate of appealability on Grounds I and III of the Petition (variance between the criminal complaint and the indictment, and alleged miscalculation of sentencing guidelines), as I find that reasonable jurists could not find the district court's assessment

of the constitutional claims debatable or wrong.  <u>See</u> <u>Slack v.</u> <u>McDaniel</u>, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(2).  As to Ground II, the issue of whether § 2255 relief is warranted for the failure of the trial counsel to raise an IADA anti-shutting violation presents a closer question without much available precedent in this Circuit, and I therefore find that reasonable jurists could find the district court's assessment of the constitutional claims fairly debatable; accordingly, a certificate of appealability will be granted as to the denial of § 2255 relief on Ground II.

The accompanying Order is entered.


**January 20, 2011**                      **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge

21